747 So.2d 109 (1999)
STATE of Louisiana, Appellee,
v.
Tony Ray ERVIN, Appellant.
No. 32,430-KA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1999.
*111 Amy C. Ellender, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Tommy J. Johnson, Bruce D. Dorris, Asst. Dist. Attys., Counsel for Appellee.
Before NORRIS, C.J., and STEWART and KOSTELKA, JJ.
NORRIS, Chief Judge.
The defendant, Tony Ray Ervin, who was 15 years of age at the time of these crimes and tried as an adult, was found guilty of two counts of armed robbery, a violation of La. R.S. 14:64, by a unanimous jury. Ervin was sentenced to the two concurrent nine-year sentences, without benefit of probation, parole or suspension of sentence. His convictions and sentences are affirmed.

Facts
On January 22, 1998, the Huntington High School football team was having its end-of-the-year banquet at the Holiday Inn. At about 10:00 p.m., after the banquet had ended, Robert Fallon, Dustin Martin, Travis Bates and Matt Angle were standing out in the parking lot next to Fallon's white 1995 Dodge Neon and Martin's 1997 Chevrolet pick-up truck. They were approached by Ervin and Larry Smith, who asked them for a ride; they told Ervin and Smith that they had no room for them in the vehicles, but that they were welcome to ride in the back of the pick-up truck. All of the victims testified that Ervin and Smith then turned their backs, reached under their coats, pulled out chrome plated guns, aimed at them and demanded that they give them their cars. The victims backed away; Smith got into Fallon's Neon, Ervin got into Martin's truck and they left the Holiday Inn parking lot with the stolen vehicles. The victims then ran into the Holiday Inn and called the police.
Rasheika Reed, Smith's former girlfriend, testified that she was with Smith and Ervin on the night of the robberies. Reed and her sister were driving her car and following the two boys in Smith's car as they approached the Holiday Inn. At some point after they passed the Holiday Inn, the boys got out of Smith's car and told her to drive it home and let her sister drive her car home. At that point, Reed switched cars and Smith and Ervin began to walk toward the Holiday Inn parking lot.
Reed pulled up the road, parked and watched Smith and Ervin walk across the parking lot and talk to four males. Reed saw Ervin and Smith get into a white car and a pick-up truck which they drove back to her house. Reed followed them to her house, got out of her car and went into the house for a few minutes, then, at the request of the boys, got back into her car and followed Ervin and Smith to a subdivision in Keithville. She waited in the car while Ervin and Smith took the tires, rims *112 and stereo from the car and put them into her car; she took Smith, Ervin and the stolen items back to her house. She did not know what happened to the stolen items after she got back to her house.
Detective Ronnie Gryder was assigned to investigate these armed robberies and was called out to the scene. He spoke first to Officer C.M. Eichenholtz of the Shreveport Police Department, who had spoken with each of the victims separately and had gotten a description of both the vehicles and the suspects. Det. Gryder then spoke with the victims and got the same description of the suspects that had been given to Eichenholtz and the same version of the events that the victims testified to at the trial. Based on this information and names later supplied by the victims, Det. Gryder discovered that two of the suspects were Smith and his girlfriend Reed. From his conversations with these individuals on January 29, 1998, he learned that Ervin had also been involved, so he brought him in for questioning as well.
Det. Gryder questioned Ervin, who was 15 years old, in the presence of his mother, after advising him and his mother of his rights using a juvenile rights form. After Ervin agreed to give a statement, he initially denied any involvement in the armed robberies. However, upon being told that Det. Gryder had already spoken to Smith and Reed and knew that he was with them on the night of January 22, 1998, Ervin admitted that he was with Smith and Reed and that he was riding in Smith's car when they passed by the Holiday Inn. Ervin stated that Smith saw the Neon and told him that he wanted that car. Smith then stopped his car, a white Cadillac, and told Reed to drive it home. Smith and Ervin crossed the parking lot, asked for rides, were turned down and then pulled guns and told the victims to give them their vehicles. Ervin admitted to having and using a .25 caliber automatic gun, which Smith gave him before the robbery. He told Det. Gryder that he took the pick-up truck and that he returned the gun to Smith after the robberies were over.
Ervin, who was 16 years of age at the time of trial, testified on his own behalf. He vehemently denied any involvement in the armed robberies and told the jury that he was arrested at his home by the police and handcuffed and brought down to the police station in the early morning hours of January 29, 1998. He testified that he confessed to the crimes because he was under arrest and handcuffed when questioned[1] and he was afraid of the police. He believed that he would be able to go home if he admitted a part in the crime. Ervin further stated that all of the victims and the other state witnesses who testified at the trial, including Reed and Det. Gryder, were lying in an effort to keep him in jail.
The jury found Ervin guilty of two counts of armed robbery. Following a sentencing hearing during which Carla Ervin, Ervin's mother, and Cynthia Denise Bloomer, a friend of the family, testified, the trial judge sentenced him to two concurrent nine-year sentences, without benefit of parole, probation or suspension of sentence. After a motion to reconsider was denied this appeal followed.

Law and Analysis
By his first assignment of error, Ervin contests the sufficiency of the evidence. He does not dispute that an armed robbery took place that evening. However, he urges that there was insufficient evidence presented at trial to identify him as the person who committed the armed robberies.
To challenge a conviction based on the insufficiency of the evidence, a defendant should proceed by way of urging a motion for acquittal or a motion for post verdict judgment of acquittal. La.C.Cr.P. art. 778; La.C.Cr.P. art. 821. However, Ervin failed to assert either of these motions. *113 Despite this procedural defect, the Louisiana Supreme Court has permitted the review of the case on appeal, even if a motion to this effect was not properly raised, when it has been briefed pursuant to a formal assignment of error. State v. Edwards, 400 So.2d 1370 (La.1981).
The standard of appellate review for sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/21/96), 677 So.2d 1008 (on rehearing), writ denied 96-1807 (La.1997), 688 So.2d 520; State v. Patrick, 31,380 (La.App.2d Cir.10/28/98), 721 So.2d 94, writ denied 98-2057 (La. 1999) 739 So.2d 780. Positive identification by only one witness may be sufficient to sustain a defendant's conviction. State v. Patrick, supra; State v. Davis, 27,961 (La. App.2d Cir.04/08/96), 672 So.2d 428, writ denied, 97-0383 (La.1997), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.), writ denied, 566 So.2d 983 (1990). The trier of fact has great discretion in assessing the credibility of witnesses. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied, 567 So.2d 93 (1990); State v. Brown, 588 So.2d 1317 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1298 (1992). Absent internal contradictions or irreconcilable conflict with physical evidence, the testimony of an eyewitness that he or she observed all the elements of the offense, coupled with the identification of the defendant as the culprit, is generally sufficient to support a conviction. State v. Davis, 626 So.2d 800, 808 (La.App. 2d Cir.1993), writ denied, 632 So.2d 762 (1994); State v. Ford, 26,422 (La.App.2d Cir.09/21/94), 643 So.2d 293.
Ervin contests not the fact of the offense but the identity of the offender. In brief, Ervin argues that no witness testified that the parking lot was well lit and that the witnesses stated that he was short and stocky and wore a gold nugget earring and had a gold tooth. Ervin testified that he never had any gold teeth or wore a gold nugget earring, although he did admit that he did have and wear gold loop earrings. Additionally, at trial Ervin was slim.
Martin testified that he and the other victims were located in the parking lot of the Holiday Inn immediately prior to the armed robbery, under a light which was working at the time. He testified that he saw Ervin, who he described as having a part in his hair and a "different face," for 5-10 minutes, and was able to provide a description of him to the police. Martin was able to pick Ervin out of a photographic line-up on January 29, 1998, and was also able to make a positive identification during his in-court testimony. Though Fallon and Angle were unable to positively identify Ervin, they were able to make a correct tentative identification of Ervin in a photographic line-up. Bates was able to positively identify Ervin both in a photographic line-up and during his in-court testimony. Bates did testify that he believed Ervin had a gold tooth and that he wore a gold nugget earring. Finally, Ervin was identified by Rasheika Reed who was with him and Smith on the night of the armed robberies. Furthermore, the jury heard testimony that Ervin admitted to Detective Gryder that he was involved in the armed robbery.
Ervin was positively identified by both Martin and Bates and by Reed who was with him and Smith both before and after the robberies occurred. Ervin had ample opportunity to cross-examine all of these *114 witnesses in great detail and apparently the jury chose to overlook the small inconsistencies in the testimony of the state's witnesses. In addition, the jury obviously believed the testimony of Reed rather than Ervin's testimony even though he argues that her testimony is suspect because she was Smith's girlfriend.
Faced with these facts, the jury obviously found the testimony of the state's witnesses more credible than Ervin's testimony. On the record presented, this court should not disturb the credibility call made by the trier of fact. State v. Davis, supra. Additionally, once the state's witnesses' credibility was established, the record evidence is sufficient to negate any reasonable possibility of misidentification. State v. Ford, supra. This assignment is without merit.
Ervin also argues that the trial court's sentences were excessive and that the trial court failed to give sufficient consideration to several mitigating factors. Ervin was found guilty of two counts of armed robbery and received two concurrent 9-year sentences without benefit of parole, probation or suspension of sentence. At the time of the commission of these offenses, Ervin was 15 years old and a first time felony offender. Ervin contends that if the trial court had considered these mitigating factors, lesser sentences would have been imposed.
In order to determine whether a sentence is excessive, the reviewing court must use a two-part test. First, the record must show that the trial court took cognizance of the factors set forth in La. C.Cr.P. art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.), writ denied, 439 So.2d 1074 (1983); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.), writ denied, 435 So.2d 438 (1983).
While the trial court need not articulate every aggravating and mitigating circumstance outlined in La.C.Cr.P. art. 894.1, the record must reflect that the court adequately considered those guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.), writ denied, 438 So.2d 1112 (1983). Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even when there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).
After determining compliance with La.C.Cr.P. art. 894.1, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La. 1983); State v. Hammonds, supra; State v. Brooks, 431 So.2d 865 (La.App. 2d Cir. 1983).
A sentence is unconstitutionally excessive in violation of La. Const. art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Thompson, 25,583 (La.App.2d Cir.1/19/94), 631 So.2d 555; State v. Lewis, 430 So.2d 1286 (La. App. 1st Cir.), writ denied, 435 So.2d 433 (1983).
The record shows that the trial court adequately articulated the factors which it considered in imposing these sentences under *115 La.C.Cr.P. art. 894.1. As mitigating factors, the court did, in fact, consider Ervin's young age of 15 years when these offenses were committed and that he was a first-time felony offender. It also considered the fact that he may have been influenced in some way by his co-defendant, Larry Smith, who was 19 years of age, at the time of these robberies. Additionally, the trial judge considered the fact that the jury asked him to be lenient in sentencing.
As aggravating factors, the court noted that, prior to the trial of this case, Ervin had been convicted, at the age of 15, of theft of $180 worth of sweatshirts from J.C. Penney while using a stolen credit card and he had been adjudicated in juvenile court for involvement in a fistic encounter with another juvenile when he was 14. The court also noted that there were guns used in this matter and that someone could have been killed or injured as a result. Further, the trial court noted that Ervin's testimony was contrary to the testimony of all other witnesses at the trial of this matter.
The trial court found that Ervin was in need of correctional treatment best provided by a custodial environment and that lesser sentences than those actually imposed would deprecate the seriousness of the offenses. The court stated that the offenses in this case could have caused serious physical harm to Ervin or to any of the victims. Based upon these facts, it is clear that the trial court adequately considered the factors for imposing sentence listed under La.C.Cr.P. art. 894.1.
It is also clear that the trial court did not abuse its discretion in sentencing Ervin, who faced a maximum sentence of 99 years at hard labor without benefit of parole, probation or suspension of sentence for each of the armed robbery convictions. La. R.S. 14:64. The sentences imposed, two concurrent 9-year sentences at hard labor without benefit of parole, probation or suspension of sentence, were extremely light in view of the maximum exposure that Ervin faced. The sentences imposed do not shock the sense of justice and are well within the trial court's discretion. This assignment of error is without merit.
We have reviewed the record for error patent, La.C.Cr.P. art. 920(2), and found none.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The prosecution recalled Det. Gryder for rebuttal testimony. Gryder maintained that Ervin was neither under arrest nor handcuffed during the interview.