818 So.2d 807 (2002)
STATE of Louisiana, Appellee,
v.
Dan MITCHELL, Appellant.
No. 35,970-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 2002.
*809 Paul Garner, Homer, for Appellant.
Richard Ieyoub, Attorney General, Walter May, Jr., District Attorney, James R. Hatch, Assistant District Attorney, for Appellee.
Before NORRIS, STEWART and DREW, JJ.
DREW, J.
Charged with armed robbery, Dan Mitchell (DOB 10/24/79) was convicted by a jury of the responsive verdict of first degree robbery. The trial court sentenced the defendant to 30 years imprisonment at hard labor, without benefits. Mitchell now *810 appeals his conviction and sentence. We affirm both.

FACTS

Crime:
On December 20, 1999, 16-year-old Brian Fisher was watching television with another juvenile, Brandon Green, at Brandon's house at 304 Marble Street in Homer, Claiborne Parish. Dan Mitchell joined them, and began talking about a "lick" for them to hit. "Lick" meant robbery, according to trial testimony. The defendant went to get a gun from his uncle's house, but was unsuccessful. Brian then called Kerry Gilbert and asked to borrow a gun. Kerry, who was also a juvenile, brought the gun to Brian, and Brian gave the gun to the defendant. At the defendant's suggestion, they went to Brian's house to get some rags (bandanas) to cover their faces. The defendant, along with Brian, Kerry and Brandon then walked up the road toward Bill's Dollar Store. They stopped at Rishanne Daniels' house and visited with her for a short time after which the four went to Bill's Dollar Store. As they waited outside on the ledge near the store, the defendant told them that Brian would come into the store with the defendant, and Kerry and Brandon would be the lookouts.
At approximately 10:00 p.m. that evening, the manager of the Bill's Dollar Store, Beverly Ruth Cotty, and her assistant, Deanne Beatty, closed the store, set the alarm and exited the building through the front doors. As Cotty attempted to lock the door, the defendant and Brian ran toward the women on the sidewalk. The defendant, who was the tallest robber, grabbed Cotty around the neck, put a gun to her neck and threatened to kill her if she said anything. Brian, the shorter, younger robber, grabbed Beatty and put his arm around her.
Cotty opened the door and the defendant forced her into the store. Brian and Beatty followed. Still holding the gun at Cotty's head and his arm around her neck, the defendant shoved Cotty toward the alarm and ordered her to disarm it. Cotty complied with the defendant's demand. The defendant then ordered Cotty to take him to the safe and shoved her in the direction of the office. Cotty told the defendant that they didn't have a safe, but kept the money in a tool box. The defendant shoved Cotty onto the office floor and under a counter where the metal box, used for storing change, was located. Cotty opened the metal box, and the defendant told her that it was not all the money. Cotty explained to the defendant that it contained only quarters, dimes and pennies. The defendant told Cotty to give him all the money, or he would kill her. Cotty placed the change in a zipper bag. The defendant shoved her with his knee as he searched the underside of the counter for an alarm. He threatened to kill her if she touched an alarm. Cotty made eye contact with Brian, who somehow indicated to the defendant that Cotty was looking at him (Brian). The defendant shoved the gun into Cotty's neck and ordered Cotty not to look at Brian or he would kill her.
Thereafter, the defendant again demanded, "Where is the money?" Cotty and Beatty told the defendant that the rest of the money was in a bank bag on the counter. After the defendant ordered Beatty to retrieve the bank bag, Brian led Beatty to the counter to get it. Beatty handed the locked bag to Cotty who attempted to retrieve the bank bag key when the defendant again threatened her life. Cotty then unlocked the bag and pleaded for their lives. The robbers mumbled between themselves, and the defendant told Cotty that she had not given them all of the money. Cotty told the *811 defendant that the bag contained approximately $5,000 and again pleaded for their lives.
Cotty and Beatty were shoved to the floor and told to lie face down. Cotty heard the defendant tell Brian to get a rope and tie them up. She also observed that the defendant's gun was cocked. The defendant moved the gun from Cotty's neck to the back of her head and commanded both victims to lie down on the floor. At this point, Cotty believed that the robbers were going to kill them both. As Cotty attempted to make a mental note of Brian's physical description, the defendant once again threatened her life. Brian went to the door but could not open it. The defendant ordered Beatty to open the door for him. After Beatty complied, Brian put the money in a store bag and ran out of the store. During Brian's escape, the defendant held a gun to Cotty's head and ordered her to wait 30 minutes before calling the police. Defendant claimed to have two cousins outside who would kill her if she moved prior to that time. The defendant left the store, and Cotty managed to telephone for help.
After the robbery, the defendant, along with Brian and Brandon ran to Brian's house, while Kerry ran home to return the gun. Kerry then joined them at Brian's house, where the defendant and Brandon counted and split up the money taken in the robbery. The defendant, Brian and Brandon each received about a thousand dollars, while Kerry's share was around five hundred dollars.
Rishanne reported seeing the four robbers together at about 9:30 on the night of the robbery. They came through a trail and were running down Church Street by her house. When Rishanne saw the four together again the next day at Carolyn Fisher's house, Brian and the defendant were counting money. Brian's sister, Latisha Walker, also saw the four robbers the day after the robbery in her home. All four were sitting around and talking about what they were going to do with their money. They all had money in their hands.
Homer Police Officer David Morgan, who lived near Brandon's home at 312 Marble Drive, was awakened in the early morning hours after the robbery (between one and three o'clock) by the flashing lights of his neighbor's patrol car alarm. Morgan telephoned his next door neighbor, who was also a police officer, to advise him about the car alarm. When Morgan looked out of his window, he saw the defendant and Brian walking back and forth between the houses of Brian and Brandon.
About a minute after receiving the call, Homer Police Officers Jimmy Hamilton and Russell Mills were among the first to arrive at Bill's Dollar Store after the robbery. Hamilton and Mills entered the store to find Cotty and Beatty lying face down on the floor near the office area. The victims, who were extremely upset, explained what had transpired. Their general descriptions of the robbers: tall, thin, black males in their late teens to early twenties, wearing dark colored clothing, hooded jackets and bandanas over their faces. It was determined that $4,453.58 was taken, including $3,708.67 in cash. A quick canvass of the area revealed no suspects. Investigators attempted to lift fingerprints from the crime scene, but no intact fingerprints were obtained.
Two days after the robbery, Hamilton received information from a confidential informant that Brian and Brandon were involved in the robbery. On patrol that afternoon, Hamilton encountered a vehicle driven by Jerry Green, Jr., and stopped the vehicle for a traffic violation. Brian and Brandon were passengers in the vehicle. *812 The driver was arrested and all of the vehicle's occupants were asked to empty their pockets. Approximately $800.00 was found on Brandon's person, and when he could not explain why he had so much money, the case began to unravel. Both Brian and Brandon gave statements to the police, and both were subsequently arrested for armed robbery. The defendant was arrested for armed robbery shortly thereafter. Approximately $910.00 of Brian's money was recovered; $320.00 was recovered from Kerry's residence. On January 5, 2000, the defendant was charged by grand jury indictment with the armed robbery of Cotty and Beatty.

TRIAL TESTIMONY
Brian agreed to give truthful testimony about the crime, and testified against the defendant at his armed robbery jury trial. Brian recounted the details of the crime and identified the defendant as the person who planned the robbery and participated in the robbery with him. In particular, Brian testified that the defendant grabbed Cotty, held the gun and gave orders during the robbery. However, Brian stated that the defendant kept the gun in his pocket and only took the gun out of his pocket when they were running out of the store. At the time of the defendant's trial, Brian was serving a five-year sentence at a juvenile facility for his part in the crime.
Brandon, who was 16 years old at the time of trial, also agreed to testify truthfully against the defendant at his trial. Brandon corroborated pertinent portions of Brian's testimony regarding the defendant's part in the crime, including the planning of the crime and the division of the money afterwards. Particularly, Brandon testified that while Brian and the defendant were in the store, he saw his brother and a police car, and ran to see what was going on. When he returned to the store, he saw the defendant and Brian running out of the store with money bags and a gun. At the time of trial, Brandon was also serving a sentence at a juvenile facility for his part in the crime. Both Brian and Brandon gave trial testimony consistent with the statements they gave to police shortly after the crime was committed. The jury also heard the trial testimony of the victims, the investigating officers, along with Rishanne and Latisha.
The defense called Officer Hamilton as a trial witness. Hamilton stated that he first encountered the defendant at the police station after the defendant turned himself in on an outstanding bench warrant for a traffic violation. Hamilton also related that he was present when Brian and Brandon were questioned at the station. Another defense witness, Officer Linda Featherston, custodian of the police records, stated that the defendant's bench warrant, issued December 20, 1999, was for failure to pay a fine. Finally, the defense called Brian as a witness and questioned him regarding his statement to police, his family living situation, and his reasons for obtaining the gun from Kerry.
At trial, Cotty testified that she saw the other robber (Brian) when he grabbed Beatty at the door, and twice when Cotty made eye contact with him inside the store. Cotty stated that she made eye contact with the defendant when he shoved her on the floor under the counter, and "immediately knew the voice." The defense objected to Cotty's voice identification testimony because of the failure to lay a proper foundation. The state then questioned Cotty regarding the foundation for this identification. Cotty testified that she saw the defendant's face from the nose up because he was wearing a bandana over his nose and lower face. The defendant was also wearing black shoes with white stripes and a dark wind suit with a hood. *813 During the course of the robbery, Cotty heard the defendant's voice "many, many times" Cotty stated that the defendant often shopped in her store, and she had heard his voice before. Cotty explained that the defendant's mother and family shopped at the store. She said her town was "little bitty," and she spoke to just about everyone who came into the store. The defense again objected to the voice identification testimony for lack of a proper foundation. The trial court overruled the objection and allowed the testimony.
Cotty then testified that the voice of the robber who grabbed her belonged to the defendant. Cotty stated that she told Beatty and the police after the robbery that she recognized the defendant's voice. Cotty said that the defendant was definitely the robber "in charge" during the robbery. The defense cross-examined Cotty regarding her identification of the defendant as the robber who held the gun on her during the crime.
Beatty testified that immediately after the crime, Cotty kept telling the officers that she recognized the robber's voice because it sounded like someone who had been in the store regularly. Beatty stated that Cotty told her later in the week after the crime that she "bet it was that Mitchell guy."
The jury found the defendant guilty of the responsive verdict of first degree robbery. A pre-sentence investigative report was ordered and reviewed by the trial court before sentencing. For his conviction of first degree robbery, the defendant was sentenced to 30 years imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. The defendant timely filed a motion to reconsider the sentence, which was denied. The defendant now appeals.

DISCUSSION

Sufficiency of the Evidence
The defendant argued on appeal that the evidence was insufficient to support his conviction of first degree robbery. He does not deny that the evidence shows that a robbery was committed, but asserts that the state failed to prove his identity as the person who committed the robbery. He contends that the state presented three witnesses placing him at the scene of the crime: Brian Fisher, Brandon Green and Beverly Cotty. The defendant asserted that the testimony of Fisher and Green was suspect because both were minors at the time of the offense and received a tremendous benefit from plea bargain agreements in exchange for their testimony. He observed the conflicting testimony of Fisher and Cotty regarding whether the defendant wielded a gun during the robbery. The defendant noted that only one of the victims, Cotty, identified him as a robber, and she did so by voice identification. He contended that the voice identification was highly suspect. The defendant further observed that there was no substantial corroborating evidence of the defendant's identity. Urging there was sufficient reasonable doubt as to his identity as one of the robbers, the defendant argued that his conviction and sentence should be reversed and vacated.
Arguing that the evidence of the defendant's guilt was overwhelming, the state noted the defendant was a suspect from the beginning. Upon their arrests, Brandon and Brian identified the defendant as the gunman. The state observed that those statements could not have been affected by subsequent plea bargain agreements. The state contended that Brandon's and Brian's testimony was corroborated by the testimony of Officer David Morgan, Rishanne Daniels and Latisha Walker. In the state's view, *814 Cotty's testimony regarding her voice identification of the defendant was further evidence of his identity as a robber.
The law on the standard of review for sufficiency of the evidence is well settled.[1] In cases involving a defendant's claim that he was not the person who committed the crime, under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Baker, 28,152 (La. App.2d Cir.5/8/96), 674 So.2d 1108, writ denied, 96-1909 (La.12/6/96), 684 So.2d 925.
Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12. In Louisiana, a defendant can be convicted on the uncorroborated testimony of an alleged accomplice. State v. Smith, XXXX-XXXX (La.6/29/01), 793 So.2d 1199; cert. denied, ___ U.S. ___, 152 L.Ed.2d 226, 152 L.Ed.2d 226 (2002) Moreover, the jurisprudence in Louisiana generally holds that an accomplice is qualified to testify against a co-perpetrator even if the prosecution offers him inducements to testify; such inducements would merely affect the witness's credibility. State v. Neal, XXXX-XXXX (La.6/29/01), 796 So.2d 649; cert. denied, ___ U.S. ___, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). The trier of fact has great discretion in assessing the credibility of witnesses. State v. Ervin, 32,430 (La.App.2d Cir.9/22/99), 747 So.2d 109, writ denied, 99-3201 (La.4/20/00), 760 So.2d 342.
A jury has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. State v. Bryant, 33,078 (La. App.2d Cir.3/1/00), 754 So.2d 387. Even if an offense is legislatively designated as responsive by La. C. Cr. P. art. 814, a defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. La. C. Cr. P. art. 814(C). If the court overrules the objection and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict. State v. Johnson, 30,078 (La.App.2d Cir.12/10/97), 704 So.2d 1269, writ denied, 98-0382 (La.6/26/98), 719 So.2d 1054.
Absent a contemporaneous objection, however, a defendant cannot complain if the jury returns a legislatively approved responsive verdict, even where there is *815 insufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, 518 So.2d 1024 (La. 1988); cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990). In this instant case, no contemporaneous objection was made.
The defendant was charged with committing the offense of armed robbery, contrary to La. R.S. 14:64. First degree robbery is a responsive verdict to the charge of armed robbery. La. C. Cr. P. art. 814(22). Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S.14:64.
The defendant argued that the evidence was insufficient to support his conviction of first degree robbery. The jury instructions stated that first degree robbery is a responsive verdict to the charge of armed robbery and included the definition of first degree robbery. Nothing in this record evidences that the defendant requested the trial court to exclude first degree robbery as a responsive verdict. Thus, this court must review the record to determine whether the evidence is sufficient to support the charged offense of armed robbery. State v. Johnson, supra.
Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, including the defendant's identity as the instigator and gunman in this robbery. The testimony of the victims alone supports the finding that this armed robbery occurred. Their testimony was that the robbers took something of value (money) belonging to another (Bill's Dollar Store) from the person of another or that was in the immediate control of another (the victims, Cotty and Beatty), by use of force or intimidation (physical force and verbal death threats), while armed with a dangerous weapon (a gun).
Contrary to the defense's argument, the record contains sufficient evidence of the defendant's identity. Using the standard set forth in Jackson v. Virginia, supra, the state met its burden of proof by negating any reasonable probability of misidentification. State v. Brady, supra; State v. Baker, supra. This evidence included testimony of the defendant's accomplices, Brian and Brandon, which detailed the defendant's involvement in the robbery, and was corroborated in part by the testimony of the victims regarding the physical description of the defendant and of the details of what transpired during the robbery. The accomplices' testimony was further corroborated by the testimony of Rishanne and Latisha regarding events before and after the robbery, including the defendant's identity and involvement in the counting of the (stolen) money. Additionally, the defendant's voice was recognized by one of the victims (Cotty), who later realized that the voice belonged to the defendant. Finally, the testimony of Officer Morgan corroborated Brian and Brandon's testimony that the defendant was at Brian's house just hours after the robbery.
The defense argued that Brian's and Brandon's testimony was "suspect" because of the inducements made by the prosecution to procure their testimony. However, as accomplices, Brian and Brandon were qualified to testify against the defendant, a co-perpetrator, even if the prosecution offered them inducements to testify. Such inducements merely affected the witnesses' credibility. See: State v. Neal, supra. The trier of fact has great discretion in assessing the credibility of witnesses. State v. Ervin, supra. The *816 jury obviously believed the accomplices' testimony, and its credibility determination will not be disturbed on appeal.
This assignment is without merit.

Voice Identification of the Defendant
The defendant argued that the trial court erred in allowing Cotty's testimony that the robber's voice was that of the defendant. Further, in defendant's view, the state failed to lay the proper foundation to establish that Cotty had sufficient contact with the defendant prior to the crime to enable her to recognize his voice. The defendant relied upon Cotty's testimony that she had "heard" the defendant's voice before because his family shopped in the store. She admitted on cross examination that she had never actually spoken to the defendant and had no recollection of any particular conversation with him. The defendant further observed Cotty did not put the voice and the defendant together for several days following the crime. Arguing that the identification was highly suspect, the defendant contended that the identification was prejudicial. Defendant argued that his conviction should be overturned and his sentence vacated.
The state maintained that a proper foundation was laid and Cotty testified as to facts within her knowledge, including her factual observation regarding the defendant's voice. The state further asserted that Cotty's recollection of the voice should go to the weight of the evidence and not its admissibility. The state noted that the defense was permitted to fully cross-examine Cotty regarding her testimony.
La. C.E. art. 701 provides:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
Both the defense and the state cited State v. Hallal, 544 So.2d 1222 (La.App. 3d Cir.1989),[2] as the law applicable to the instant case, which held:
Generally, a witness may testify only to facts within his knowledge and may not testify as to any impression or opinion that he may have. However, where the subject of the testimony is such that a person of ordinary experience may make a natural inference from observed facts, a lay witness may testify as to such inferences. In such cases, the witness must state the observed facts upon which the inference is based.
In the instant case, the identification by the victim of appellant as a participant in the September 6, 1987 robbery was based on several factors, one of which was identification by voice. Additionally, the victim identified appellant by similarities in modus operandi between the two incidents and by positively identifying the weapons used in the two robberies. Voice identification constitutes a problem of authentication rather than a problem of a lay witness' competency to identify a voice. Under the circumstances, the testimony of the victim that appellant committed both robberies constituted *817 a natural inference from facts personally observed during the two robberies. The witness stated the factors upon which the inference is based. The fact that identification of appellant as the perpetrator of the September 6, 1987 robbery is based largely on recognition of his voice during a robbery five months later should go to the weight afforded the identification as opposed to its admissibility. (Citations omitted.)
In State v. Hubbard, 97-916 (La.App. 5th Cir.1/27/98), 708 So.2d 1099, writ denied, 98-0643 (La.8/28/98), 723 So.2d 415, the court held that generally, a lay witness can only testify to the facts within his knowledge and not to impressions or opinions; however, a witness is permitted to draw reasonable inferences from his personal observations. The court further held that where the subject of the testimony is such that any person of experience may make a natural inference from observed facts, a lay witness may testify as to such inferences, provided he also states the observed facts. State v. Hubbard, supra.
In State v. Green, 448 So.2d 782, (La. App. 2d Cir.1984), this court held:
Voice identification is a problem of authentication rather than a problem of a lay witness's competency to identify a voice. Sufficient authentication can be established by circumstantial evidence pointing to the unseen speaker's identity or by testimony of a witness familiar with the speaker's voice. Authentication based on familiarity with the speaker's voice can be gained subsequent to the communication. (Citation omitted.)
The trial court correctly found that the state laid a sufficient foundation to support Cotty's lay opinion testimony concerning her inferences regarding the defendant's voice which were drawn from personal factual observations. Cotty testified that during the course of the robbery, she heard the defendant's voice "many, many times." Cotty stated that the defendant shopped in her store, and she had heard his voice before. Cotty explained that the defendant's mother and family shopped at the store. She said her town was "little bitty," and she spoke to just about everyone who came into the store. This argument is therefore without merit.
Furthermore, by applying State v. Green, supra, Cotty's voice identification could be considered a problem of authentication rather than a problem of a lay witness's competency to identify a voice. Analyzed as such, this record shows sufficient authentication established by circumstantial evidence, including the testimony of Rishanne and Latisha regarding events before and after the robbery, and the defendant's identity and involvement in the counting of the stolen money. Direct evidence of authentication included the identity testimony of Brian and Brandon, two participants in the crime. Additional authentication was established by Cotty's testimony that she was familiar with the speaker's voice. Thus analyzed, Cotty's voice identification of the defendant can be considered to have been sufficiently authenticated as per State v. Green, supra. This assignment is therefore without merit.

Excessive Sentence
While acknowledging that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1, the defendant contended that the trial court failed to give sufficient emphasis to several mitigating factors, including his youth and his first felony offender status. The defendant argued that the record failed to support the imposition of a 30-year hard labor sentence without benefits, and this sentence shocked the sense of justice. He *818 also complained that the trial court seemed to justify the sentence because the trial court considered the crime committed was, in fact, an armed robbery. The defendant concluded that the goals of punishment and rehabilitation can be considered with a less harsh sentence.
In the state's view, the seriousness of the crime was underscored by Cotty's testimony that the defendant repeatedly threatened to kill her, the defendant's gun was cocked, and that she and the other victim were in grave apprehension of death. The defendant was the instigator of the crime and enlisted the help of three juveniles to hit this "lick." In sentencing the defendant, the trial court noted that it felt that armed robbery had been proved, but the jury reached the compromise verdict of first degree robbery. According to the state, the trial court followed the guidelines and set forth a reasonable basis for the defendant's punishment.
The law on appellate review for excessiveness of sentence is well settled.[3]
The sentencing range for first degree robbery is found in La. R.S. 14:64.1B which provides, in pertinent part:
Whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence.
The trial court thoroughly complied with the provisions of La. C. Cr. P. art. 894.1 in sentencing the defendant. Particularly, the record shows that the trial court was aware of the matters urged by the defense prior to imposing sentence, *819 i.e., his youth and first felony offender status. There is no requirement that these specific matters be given any particular weight at sentencing. State v. Jones, 33-111, (La.App.2d Cir.3/1/00), 754 So.2d at 394, writ denied, XXXX-XXXX (La.2/02/01), 783 So.2d 385. The first prong of the test of excessiveness of a sentence has been met.
The defendant's sentence of 30 years imprisonment at hard labor, without benefit of probation, parole or suspension of sentence, is 10 years less than the maximum sentence possible for a conviction of first degree robbery. This upper range sentence, reserved for the more serious offenders and the more opprobrious offenses, is entirely appropriate in the instant case. The defendant wielded a cocked gun and repeatedly threatened to kill both victims several times during the course of the robbery. Defendant cruelly made some of these threats with a gun pointed to the back of victim's head. The potential for loss of multiple lives during this crime was great. The trauma suffered by both victims during and subsequent to the crime of violence was significant. The defendant enlisted the help of three juveniles, at least two of whom are now serving sentences in juvenile detention facilities for their roles in the crime. Considering the horrifying circumstances of the case and the background of the defendant, it cannot be said that the defendant's sentence is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. When this crime and the defendant's punishment are viewed in light of the harm done to society, the sentence does not shock the sense of justice. On this record, the defendant's sentence is not unconstitutionally excessive.

DECREE
The defendant's conviction and sentence are AFFIRMED.
NOTES
[1] Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writ denied, 00-3070 (La.10/26/01), 799 So.2d 1150.

This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court accords great deference to a judge's or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
[2] Writs were granted by the Louisiana Supreme Court in this case in State v. Hallal, 556 So.2d 46 (La.1990), and the case was reversed and vacated, 557 So.2d 1388 (La. 1990), based on another issue. The supreme court determined that the defendant was prejudiced by the trial court's erroneous failure to excuse a prospective juror for cause, where the defense counsel exhausted his peremptory challenges in the course of voir dire examination. The case was remanded and retried, and the conviction and sentence were subsequently affirmed in State v. Hallal, 594 So.2d 1071 (La.App. 3d Cir.1992).
[3] The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.

There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
As a general rule, maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. State v. Soco, 441 So.2d 719 (La.1983); State v. Adger, 35,111 (La.App.2d Cir.9/26/01), 797 So.2d 146.