# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## JAK 09-532


**STATE IN THE INTEREST OF**

**T.W.**


********


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC20080837
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE


********


## JOHN D. SAUNDERS
## JUDGE


********


Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.

**ADJUDICATION AFFIRMED, DISPOSITION SET ASIDE, AND REMANDED WITH INSTRUCTIONS.**


Annette Fuller Roach
Louisiana Appellate Project
P. O. Box 1747
Lake Charles, LA 70602-1747
(337) 436-2900
Counsel for Defendant/Appellant:
T.W.

Michelle Breaux
Assistant DA - 15th JDC
P. O. Box 3306
Lafayette, LA 70502
(337) 232-5170
Counsel for Appellee:
State of Louisiana

**SAUNDERS, Judge**

**FACTS AND PROCEDURAL HISTORY**

The State of Louisiana filed a petition for delinquency on August 12, 2008, contending the Juvenile, T.W., should be adjudicated a delinquent in that he committed armed robbery, in violation of La.R.S. 14:64. The trial court heard evidence on February 11, 2009, and found T.W. to be a delinquent child. The trial court then rendered a disposition, remanding the Juvenile to the Department of Juvenile Justice until the age of twenty-one.

The Juvenile was convicted of having robbed Cigarettes and Checks on Kaliste Saloom Road in Lafayette at 10:30 a.m. on August 8, 2008, while armed with a gun. The owner of the store indicated $12,000.37 was taken during the robbery. A Motion for Expedited Appeal and Designation of Record was filed on February 23, 2009, and subsequently granted. The Juvenile is now before this court asserting the following assignments of error:

**APPELLANT'S ASSIGNMENTS OF ERROR:**

1. The evidence introduced at the adjudication hearing of this case when viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, was insufficient to prove all of the elements of the offense of armed robbery beyond a reasonable doubt.

2. The juvenile court failed to conduct a disposition hearing as required by La. Child. Code art. 893.

3. The juvenile judge failed to address the needs of [T.W.] in arriving at the disposition in this case[,] and the imposition of juvenile life is excessive.

4. The juvenile judge erred when it agreed with the prosecutor that it lacked discretion and was required to impose a disposition of secure confinement until [T.W.'s] twenty-first birthday.

5. Trial counsel rendered ineffective assistance by failing to move the court for dismissal of the Petition due to the State's failure to timely set the adjudication hearing.

**LAW AND DISCUSSION OF THE MERITS:**

Assignment of Error No. 1

In his first assignment of error, T.W. contends the evidence introduced at the adjudication hearing was insufficient to prove all of the elements of the offense of armed robbery beyond a reasonable doubt.

> In a juvenile proceeding, the state's burden of proof is the same as in a criminal proceeding against an adult--to prove beyond a reasonable doubt every element of the offense alleged in the petition. La. Ch.Code art. 883; *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State in the interest of D.P.B.*, 02-1742, pp. 4-5 (La. 5/20/03), 846 So.2d 753, 756.

"[A]ppellate review in juvenile delinquency proceedings extends to both law and facts." *State in the interest of L.T.*, 99-487, p. 6 (La.App. 3 Cir. 10/13/99), 747 So.2d 148, 152.

> In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and if such a basis does exist, (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *See Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the appellate court may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Id.*

*State in the interest of D.H.*, 04-2105, pp. 7-8 (La.App. 1 Cir. 2/11/05), 906 So.2d 554, 560.

2

[W]hen the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La.4/24/06), 931 So.2d 297; *State v. Neal*, 00-0674 (La.6/29/01), 796 So.2d 649. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03-3067 at p. 18, 931 So.2d at 311; *Neal*, 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988).

*State v. Hughes*, 05-992, pp. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051.

"Identification by a single witness may support a conviction despite considerable alibi testimony. *State in the Interest of Johnson*, 461 So.2d 551 (La.App. 3 Cir.1984); *State v. Brian*, 502 So.2d 293 (La.App. 3 Cir.1987)." *State v. Henry*, 95-428, p. 6 (La.App. 3 Cir. 10/4/95), 663 So.2d 309, 311, *writ denied*, 96-681 (La. 5/16/97), 693 So.2d 793. "In Louisiana, a defendant can be convicted on the uncorroborated testimony of an alleged accomplice." *State v. Mitchell*, 35,970, p. 10 (La.App. 2 Cir. 5/8/02), 818 So.2d 807, 814.

Luis Farfan (Farfan), the manager of Cigarettes and Checks, testified that he was robbed at gun point on August 8, 2008, between 10:30 and 11:00 a.m. by two men. Farfan described one man as tall and the other as a little shorter. The taller man was five feet six or seven inches, and the shorter man was five feet three or four inches. The two men were dressed in black and wore sunglasses, and one had a red bandana over his face. He did not recall what the other man's face was covered with. However, he testified that neither of the men wore a shirt over his face. The taller man, who wore the red bandana, possessed the gun. Farfan testified that one of the men was black.

Helen Mouton (Mouton) testified that she lived on Rosedale Drive and could see the back of Cigarettes and Checks from her home. On August 8, 2008, Mouton was having a yard sale and testified regarding what she saw that day as follows:

I told him we were having a yard sale and that we were in the driveway and looking towards the street and where my little table was about twelve (12) feet from the street and that we saw -- first of all, we saw two guys walking down the street that we had previously seen in the neighborhood. And we waved to them, and they waved back to us.

Her testimony continued as follows:

And the same two guys at the approximate time of the robbery that the detective told me that the store had been robbed, these two guys were hauling it down our street toward Verot School Road. And that would be the same two guys that we had seen earlier go toward Kaliste Saloom Road.

She testified that the men wore black warmup apparel and, when they were running down the street, they had hoods on. She further testified that one wore a shirt that had a large red and white design. The men were between the ages of seventeen and twenty-five.

Brittney Bujard (Bujard) testified that she worked at Sugar and Spice Daycare which was across the street from the apartment complex where the Juvenile lived. On August 8, 2008, she saw a man grab a black bag out of the bushes. She testified that the bag looked like a purse, but it did not have straps. The man then ran to the apartment building. She could not identify the Juvenile as the person she saw retrieving the bag.

In her statement to police, Bujard said that the man wore a black shirt that had graffiti in various colors on it and baggy shorts that were tan, off-white, or khaki. He also wore red boxers with a light-colored print on them. She testified that she told police the man was five feet five to seven inches tall. She further testified that he was wearing pants.

Detective Craig Mouton was dispatched on August 8, 2008, to Cigarettes and Checks. Detective Mouton testified that he was informed that the men who robbed

4

the store were wearing "dark clothing, wind pants, dark . . . hoodie, which is a jacket with a hood. And something covering their face. One had a red bandana . . . . And the other one had a black bandana. . . ." They also wore sunglasses. Police, after following a lead, went to apartment sixty-eight at an apartment complex on South Beadle. Detective Mouton indicated police found a hoodie, wind pants, and a red bandana in the apartment. However, the clothes that were seized were "common clothes." Police searched the apartment a second time looking for the gun used in the robbery, but it was not found. Additionally, no money was recovered.

Detective Mouton indicated that a person at Sugar and Spice Daycare reported seeing two black males walking on South Beadle Road toward the apartment complex carrying a purse. She was presented a photographic lineup from which she selected the Juvenile's brother, stating she was seventy percent sure he was the person she observed walking on South Beadle Road.

Detective David LeBlanc testified that Sugar and Spice Daycare was across the street from the apartment complex, and Cigarettes and Checks was about a mile away from the apartment complex. Detective LeBlanc further testified that when searching the apartment, police found two black sweatshirts in the living room, a denim jacket with a hood in a bedroom, a black pair of wind pants in a bedroom, and a gold shoe in the closet with a plastic bag containing a substance that tested positive for cocaine. Police also seized two red bandanas, two black bandanas, and a pair of sunglasses. Police did not find a sweatshirt with bright colors on it. The items were found in the bedroom of the Juvenile's brother. Detective LeBlanc also testified that Bujard was presented with a photographic lineup and indicated she was seventy percent sure the Juvenile's brother was one of the people she saw acting suspiciously on the day in

question.

Antoine Charles (Charles), who was incarcerated at the time of the hearing, testified that on August 8, 2008, he and the Juvenile went to Cigarettes and Checks. Charles testified that the Juvenile entered the store with a gun, and he followed. The Juvenile then told the clerk to put the money in the bag. Charles testified that he forgot what kind of gun the Juvenile had. After the Juvenile got the money, the two ran toward the apartment complex and went to the Juvenile's home. At that time, the Juvenile's older brother was home. After they entered the apartment, the money was counted, and Charles left. Charles did not know what the Juvenile did with the money, and he did not get any of the money. In his statement to police, Charles said he went straight to his house after the robbery.

Charles testified that he wore all black clothing and a hoodie during the robbery, and his face was also covered with a bandana, which he thought was red. In a statement to police, he indicated the bandana was red. He testified that the Juvenile's face was covered with a black shirt. He further stated, "[h]e had like it was a hoodie like but it was just a shirt."

B.W., the Juvenile's mother, testified that on the morning of August 8, 2008, she brought the Juvenile to Comeaux High School to complete registration and left him there at approximately 9:30 or 9:40 a.m. B.W. then stopped by her apartment for a few minutes and proceeded to work. She testified that her neighbor called her between 10:20 and 11:00 a.m. and informed her that her sons were in the back of a police car.

B.W. further testified that the Juvenile was five feet eight or nine inches tall at the time of the hearing, and he had not grown that much. B.W. indicated that the

Juvenile and Charles once had words over Charles picking on a little boy. B.W. also testified that the Juvenile had never been in trouble before. However, she subsequently admitted that he had been involved in simple criminal damage to property in 2007 and a simple burglary in "November of 2008." She then testified that she meant he had never been in trouble of this magnitude.

In brief to this court, the Juvenile does not dispute that an armed robbery occurred. However, he asserts the evidence was insufficient to prove he committed the offense. The Juvenile contends there was no testimony that physical evidence located at the scene linked him to the crime. No money was recovered from his residence or his person, the gun was not located, and, although clothes which matched the general description given by Farfan and Mouton were located in the apartment where he resided, most were found in his brother's room and were very generic or common. Further, the Juvenile provided evidence to explain why Charles would falsely accuse him. The Juvenile concludes that the State failed to negate the probability of misidentification; thus, his adjudication should be set aside.

We note there are discrepancies in the testimony in this case. Farfan testified that the taller man wore the red bandana and had the gun, while Charles testified that he wore a red bandana, and the Juvenile had the gun. Charles further testified that the Juvenile wore his shirt over his face, and Farfan testified that neither of the men covered their face with a shirt. Mouton testified that Farfan said the men wore dark hoodies, and Farfan testified that the men were dressed in black. Further, a denim hoodie and two black sweatshirts were found at the Juvenile's residence. However, Mouton and Bujard testified regarding a printed sweatshirt, and no printed sweatshirt was found at the Juvenile's residence, and Farfan did not indicate that either man's

7

shirt bore a print or was any color other than black.

Although these discrepancies exist, we find that the judge made a credibility determination in this matter and found the Juvenile committed armed robbery. Accordingly, this court finds that this assignment of error lacks merit, and we affirm the trial court's determination.

Assignment of Error No. 2

In his second assignment of error, the Juvenile contends the trial judge failed to conduct a disposition hearing in the case at bar.

Louisiana Children's Code Article 892 provides: "Prior to entering a judgment of disposition, the court shall conduct a disposition hearing. The disposition hearing may be conducted immediately after the adjudication and shall be conducted within thirty days after the adjudication. Such period may be extended for good cause."

More specifically, La.Ch.Code art. 893 adds, in pertinent part:

A. At the disposition hearing, unless the child waives the presentation, the court shall hear evidence as to whether the child is in need of treatment or rehabilitation and shall make and file its findings.

B. All evidence helpful in determining the proper disposition, including oral and written reports, the report of the predisposition investigation, any reports of mental evaluation, and all other evidence offered by the child or the state shall be received by the court and may be relied upon to the extent of its probative value even though not admissible at the adjudication hearing. Upon motion of the district attorney or the child, the court may hear testimony from the victim of the offense.

C. Counsel for the state and for the child shall be afforded an opportunity to present evidence and to examine and controvert written reports so received and to cross-examine individuals preparing the reports or other witnesses who give testimony at the hearing. Sources of confidential information need not be disclosed.

Immediately after the adjudication in the case at bar, the following transpired:

8

THE COURT: All right. The Court finds the defendant guilty as charged and orders the defendant to serve –

MS. NEUMANN: Judge, before you set that, we might just indicate that he's been in jail since August, which is six (6) months. He has been a model prisoner. He has helped in –

THE COURT: This is a serious offense. I understand. This kid is in denial, and I don't like what I've heard. And he's going to serve until his twenty-first (21st) birthday because that's as long as I can lock him up for.

MS. BREAUX: You have to, Judge. You have no discretion.

THE COURT: Yes.

MS. BREAUX: Thank you.

The Juvenile asserts that familiarity with a juvenile and a lengthy history with the trial court does not absolve the trial court from conducting a disposition hearing. Further, counsel's failure to object to the immediate disposition did not waive his right to a hearing. In support of his argument, the Juvenile cites *State in the Interest of O.R.*, 96-890 (La.App. 5 Cir. 2/25/97), 690 So.2d 200; *State ex rel. E.S.*, an unpublished opinion bearing docket number 08-41 (La.App. 4 Cir. 8/20/08); and *State in the Interest of C.D.*, 95-160 (La.App. 5 Cir. 6/28/95), 658 So.2d 39.

In *C.D.*, 658 So.2d 39, and *O.R.*, 690 So.2d 200, the fifth circuit vacated the dispositions and remanded for disposition hearings where the record failed to reflect that disposition hearings had been held, and the record failed to reflect that the juveniles waived such a hearing.

In *State in the interest of K.G.*, 34,535 (La.App. 2 Cir. 1/24/01), 778 So.2d 716, the trial court conducted a summary disposition without a hearing. The second circuit vacated the disposition and remanded for a disposition hearing or a clear waiver of the hearing. In reaching its decision, the second circuit chose not to interpret defense

9

counsel's silence as a waiver.

In light of the mandatory language of La.Ch.Code art. 892, we vacate the disposition and remand the case for a disposition hearing.

## Assignment of Error No. 3

In his third assignment of error, the Juvenile contends juvenile life was not the least restrictive disposition appropriate in this case and a lesser disposition would satisfy the needs of all concerned. In light of our decision that the disposition be vacated, no further discussion on this issue is necessary.

## Assignment of Error No. 4

In his fourth assignment of error, the Juvenile contends that the trial judge erred in concluding it had no discretion as to the length of the disposition imposed. In light of our decision that the disposition be vacated, no further discussion on this issue is necessary.

## Assignment of Error No. 5

In his fifth assignment of error, the Juvenile contends that trial counsel rendered ineffective assistance of counsel by failing to object to the time delays or failing to seek relief as a result of the untimely hearings held in this matter.

La.Ch.Code art. 854 requires a child continued in custody to appear to answer the petition within five days after the filing of the petition, unless it is filed prior to or during the continued custody hearing. When that occurs, the court can order the juvenile to answer the petition at the conclusion of the hearing. The Juvenile asserts that it is possible that he was called on to appear and answer the petition more than five days after it was filed, which would have violated the mandates of La.Child.Code art. 854.

Further, La.Child.Code art. 877 requires that adjudication hearings be set within thirty days of the appearance to answer the petition if the child is continued in custody, and within ninety days if the child is not continued in custody.

Based on the original court minutes, appellate counsel asserts the Juvenile appeared to answer the petition on October 29, 2008, and the adjudication hearing was set for December 3, 2008. The Juvenile asserts the adjudication hearing was set five days in excess of the thirty-day period provided for by article 877. The December hearing was continued by joint motion and set for January 7, 2009. Further on January 7, 2009, the State sought a continuance, and counsel for the Juvenile objected to the continuance. However, the continuance was granted and the matter was set for February 11, 2009. The Juvenile noted the transcript of the continuance is not contained in the record and the minutes of court do not indicate any showing of good cause for the continuance.

The Juvenile asserts the record indicates he remained in custody between the appearance date of October 29, 2008, and the hearing date of December 3, 2008. The Juvenile further asserts this setting clearly violated La.Ch.Code art. 877. Further, the adjudication hearing was not held until February 11, 2009, fifteen days after the lapse of the ninety-day period allowed by article 877, when the Juvenile was not in custody. In a footnote in her brief to this court, appellate counsel asserts that although the minutes of court for December 3, 2008, indicate a bond was set and the Juvenile was placed under house arrest, there was no evidence that he actually posted bond and information obtained from the Juvenile indicated he was not released on bond after his arrest on August 8, 2008. The Juvenile further asserts the record does not indicate the State attempted to show good cause for any of the settings or a finding by the

11

court that good cause for extension of the time limitations existed.

The Juvenile contends it was error for the case to be heard outside the thirty day and the ninety-day periods without a showing of good cause. He further contends that if counsel would have filed a motion to dismiss the petition after the first hearing date, which exceeded the thirty-day period, the petition would have likely been dismissed, and he would have been discharged from custody. He asserts that the same result would likely have occurred even if a motion was filed after the adjudication hearing.

We note that although the original court minutes of October 29, 2008, indicate the Juvenile was arraigned, the transcript of that date and corrected court minutes do not show the Juvenile was arraigned. At a hearing held on December 3, 2008, the State asserted legal delays were waived because the matter had to proceed to trial within thirty days. However, the waiver of delays does not appear in the record. Furthermore, the Juvenile did not object to a continuance that was granted on December 3, 2008, which the State sought because it was not prepared to proceed to trial. On January 7, 2009, the State sought another continuance, which was granted over the objection of the Juvenile. However, there is no recording of the hearing held on that date. Thus, the basis for the objection is not clear.

For the above stated reasons, we find the record before this court is insufficient to make definitive findings as to the Juvenile's claims that counsel was ineffective for failing to object to the time delays or to seek relief as a result of untimely hearings. Accordingly, the Juvenile's claims are relegated to post-conviction relief proceedings where, if warranted, a full evidentiary hearing may be conducted to develop a sufficient record on the issues raised. *See State v. Leger*, 05-11 (La. 7/10/06), 936

12

So.2d 108, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007).

**CONCLUSION:**

For the reasons stated above, the Juvenile's adjudication is affirmed. However, the Juvenile's disposition is vacated and the matter remanded for a disposition hearing.

**ADJUDICATION AFFIRMED, DISPOSITION SET ASIDE, AND REMANDED WITH INSTRUCTIONS.**