907 So.2d 263 (2005)
STATE of Louisiana, Appellee
v.
Justin T. ECHOLS, Appellant.
No. 39,754-KA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*265 Culpepper & Carroll, by Teresa Carroll, Jonesboro, Gina M. Jones, for Appellant.
Robert W. Levy, District Attorney, A. Shawn Alford, Assistant District Attorney, for Appellee.
Before WILLIAMS, STEWART and DREW, JJ.
STEWART, J.
Justin T. Echols ("Echols") was charged with forcible rape, and was convicted by a jury of the responsive verdict of sexual battery. He was sentenced to serve four years imprisonment at hard labor without benefits plus a fine of $2,000.00. The defendant now appeals. For the reasons that follow, we affirm his conviction, and affirm his sentence as amended.

FACTS
On December 21, 2001, the defendant, then age 19, attended a Christmas party for the employees of the Union Parish Detention Center where he worked as a corrections officer. The defendant drank enough alcohol at the party to become intoxicated. The party ended early because of a fight, so Echols drove his truck into Farmerville. He arrived at the McDonald's parking lot, where he met two teenage female acquaintances, ages 15 and 16 respectively, whom he convinced to "make loops" (ride around) with him between the McDonald's, Sonic, and Wal-Mart parking lots. The 16-year-old girl drove the defendant's truck because he was intoxicated. As she drove, Echols tried to put his hands down her shirt, and appeared to be interested in having sex with the 15-year-old girl. The girls grew concerned about being raped because Echols was intoxicated and making sexual advances at them, so they left his truck at about midnight.
*266 The victim, 18-year-old J.K.,[1] was also driving around Farmerville that night, making loops, visiting with friends, and waiting for her younger brother to get off work at McDonald's. She was supposed to pick him up from work at 1:00 a.m. and then drive to their parents' house. J.K. was visiting two friends in the Sonic parking lot when Echols drove up. J.K. had known the defendant for a while and had no particular relationship with him, but she considered him "just as a friend." Echols came over and sat down in J.K.'s vehicle. According to J.K., Echols asked her to have sex with him, but she assumed he was "picking" and "blew it off." When Echols noticed that J.K. did not have much gasoline in her car, he asked her if she wanted to make loops with him in his truck. She agreed.
J.K.'s account of the events that followed differed from Echols' regarding her consent to subsequent multiple sexual acts. J.K. related that instead of making the usual loop, Echols drove her straight to Bad Eye Road in Union Parish and parked his truck. J.K. asked Echols why they had stopped, and he said that they were just going to talk.
The next thing J.K. knew, the defendant was on the passenger side of the truck pinning down the top part of her arms and shoulders to the seat. He then reclined the passenger seat, took her clothes off and undressed himself. J.K. kept telling the defendant "no" and trying to resist him, but he overpowered her and told her to be still and quiet and to "take it or else he would get it the way he wanted it." J.K. felt powerless. Echols first had vaginal sexual intercourse with J.K., and then returned to the driver's seat and made J.K. perform oral sex on him by pulling her hair and pushing her head up and down on his penis. He went back over to the passenger seat and raped J.K. again vaginally and then turned her over and had anal sexual intercourse. When J.K. protested that the anal sex hurt, Echols then inserted his penis back into her mouth and demanded that she swallow his ejaculate.
On cross-examination, the defense questioned J.K. regarding the sequence of the sex acts, and whether her trial testimony on the sequence was consistent with her statement to police and her testimony at the preliminary hearing. J.K. testified that she resisted the defendant to the best of her ability during the entire rape. She admitted that the defendant never threatened her, never told her he was going to hurt her, and never slapped her other than once on her behind. However, the defendant keep telling her he "wanted it and he was going to get it."
During the rape, J.K.'s brother called her on her cell phone three times. J.K.'s brother told her during their first phone call that he would be getting off of work soon. J.K. told her brother that she was at Wal-Mart talking to the defendant, because she was afraid that the defendant might hurt her even more. During the second phone call, J.K.'s brother asked her where she was, because she had plenty of time to be there by now. J.K. told him that she was on her way. She did not answer the third phone call from her brother because Echols would not let her. J.K. did not tell anyone about these phone calls until defense counsel requested her phone records.
J.K. related that after they each dressed themselves, the defendant returned her to her car at the Sonic parking lot where her *267 brother was waiting for her. J.K. admitted on cross-examination that she lied to her parents by telling them the reason that they were late getting home was because her brother got off work late. She also admitted asking her brother to lie to their parents. She further admitted giving conflicting prior testimony at the preliminary hearing regarding her brother figuring out that she was out having sex, and the order of the sex acts.
J.K. reported the rape to her mother the next day. Sergeant Marcie Cooper of the Union Parish Sheriff's Office responded to the rape complaint. Sergeant Cooper took J.K.'s statement. An examination of her body revealed that the nipples and the areola of both breasts were bruised. J.K. also had bruises and "hickeys" on her neck. Sergeant Cooper observed two bite marks on J.K.'s chest and one on her back. These injuries were consistent with J.K.'s statement. J.K. was not emotional and did not cry during the interview. J.K. was angry about being "used" because the defendant treated her like "a slut he was paying for."
J.K. was examined at the hospital by a physician later that night. A rape kit examination was also performed. The physical examination was inconclusive regarding consent. The examining physician diagnosed rape based on the history taken from J.K.
Late that evening, Sergeant Cooper and Detective Chris Wingfield contacted the defendant at his home. They took him to the sheriff's office where, after being advised of his constitutional rights, he was interviewed regarding J.K.'s rape complaint. At first, the defendant admitted that he and J.K. had ridden around together, but he denied that he had gone to the location of the rape. The defendant further denied that he had sex with J.K. The defendant eventually admitted that he and J.K. had sexual intercourse but stated that it was consensual. When Detective Wingfield asked the defendant if he bit, pinched, or hit J.K., he became agitated and said he may have slapped her "ass" or pulled her hair in the heat of the moment because he likes it "rough." The defendant became more angry as the interview continued. The defendant denied having anal intercourse with J.K., and asserted that if they did, it was accidental. Detective Wingfield did not observe any marks, scratches or bruises on the defendant.
The defendant was charged by bill of information with forcible rape. At trial, the victim, detectives, expert witnesses, and the two teenage girls testified to the above-related events. The state also presented the testimony of a local car dealer, who brought a 1995 Chevrolet pickup truck to the courthouse, which had the same size cab as the defendant's truck. The jury was allowed to view the truck, including the size of the interior of the cab.
The defense presented the testimony of the defendant's friends, Linda and Robert Boyd. Robert was working at Sonic on the night of the incident. While Linda waited in her car for her husband to get off work, the defendant got into her car and talked with her for a while. After J.K. arrived at Sonic, the defendant went over to talk to J.K. He came back and told Linda that J.K. was "gonna give him some." Thereafter, J.K. parked her car, got into the defendant's truck, and they drove off.
Echols testified at trial that he first talked to J.K. at the Sonic. He started asking her if she wanted to have sex, she kept saying "no, no, no" because she knew he was "picking." But, finally, J.K. said, "Well, yeah, let's go." He claimed that he and J.K. flirted with each other as he drove to Bad Eye Road. J.K. also kissed him and rubbed his crotch. He described how they each undressed themselves. He *268 stated that she was a willing participant in a series of sexual acts, including vaginal, anal, and oral sexual intercourse. Echols testified that because of the limited room in the cab of the truck, it would have been impossible for both of them to be on the same side of the truck changing positions between vaginal and anal intercourse. Afterward, each dressed themselves, and he took her back to the Sonic where her brother was waiting for her. Echols then told J.K. good night, and she got out of the truck.
The defense also presented the testimony of J.K.'s brother, who stated that he had been off work about 30 minutes when J.K. arrived back at the Sonic parking lot. He admitted that he was angry when he saw J.K. drive up with the defendant because he thought she had been off having sex with him. Although he and his sister did not have a curfew that night, the brother acknowledged that they would have gotten into trouble if his parents had known that they hadn't come home immediately after he finished work.
After jury trial, the defendant was convicted of the responsive verdict of sexual battery. The defendant's motions for new trial and post-verdict judgment of acquittal were denied by the trial court. On August 17, 2004, the defendant was sentenced to serve four years imprisonment at hard labor without benefits plus a fine of $2,000.00. An oral motion for reconsideration of sentence was made and denied. This appeal followed.

DISCUSSION

Sufficiency of Evidence
The defense argues the state failed to sufficiently prove that the defendant committed a sexual battery. Because the defendant admitted to consensual contact with the victim, the defense focused its argument on the victim's consent, whether evidence was presented that she was not the defendant's spouse, and the defendant's intent. Regarding the issue of consent, the defense extensively summarizes trial testimony and contends that there was both contradictory testimony given by the victim and conflict with other evidence presented. For example, the defense argues that it is hard to conceive of the "acrobatic maneuvers" necessary to undress and force someone to have all types of sexual relations within the confines of the limited space of the cab of the defendant's pickup truck. It notes that the victim had no bruises on her upper arms or shoulders to corroborate her account of how she was pinned down. The defense further notes that despite constantly screaming "no" to the defendant during the rape, the victim managed to have two cell phone conversations with her brother during the rape and failed to tell him what was happening to her. The defense further argues that there was no intent to commit the crime sexual battery because of the victim's consent.
The state notes that the defense's entire argument regarding consent is based on the premise that the victim lied. It further notes that the jury, given conflicting testimony from the victim and the defendant, believed the victim. The state argues that there were no internal contradictions or irreconcilable differences between the victim's testimony and the physical evidence. Thus, the victim's testimony, which was evidently accepted as true, is sufficient to support the conviction. The state further argues that the physician's diagnosis of rape was not in conflict with the victim's testimony. Regarding the lack of proof of no spousal relationship, the state quotes extensively from the victim's direct testimony, which indicated no relationship with the defendant other than being friends.
*269 The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. State v. Howard, 31,807 (La.App.2d Cir.8/18/99), 746 So.2d 49, rehearing denied 9/16/1999, writ denied, 1999-2960 (La.5/5/00), 760 So.2d 1190.
La. C. Cr. P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255; Allen v. Louisiana, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d *270 Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048. This is equally applicable to the testimony of victims of sexual assault. State v. Hannon, 37,351 (La.App. 2d Cir.8/20/03), 852 So.2d 1141; State v. Ponsell, 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490; State v. Robinson, 36,147 (La.App. 2d Cir.12/11/02), 833 So.2d 1207. Indeed, such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Hannon, supra; State v. Ponsell, supra; State v. Watson, 32,203 (La.App. 2d Cir.8/18/99), 743 So.2d 239, writ denied, XXXX-XXXX (La.3/31/00), 759 So.2d 69; State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (La.1992).
A jury has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. State v. Mitchell, 35,970 (La.App. 2d Cir.5/08/02), 818 So.2d 807; State v. Bryant, 33,078 (La.App. 2d Cir.3/1/00), 754 So.2d 387. Even if an offense is legislatively designated as responsive by La. C. Cr. P. art. 814, a defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. La. C. Cr. P. art. 814(C); State v. Mitchell, supra; State v. Johnson, 30,078 (La.App. 2d Cir.12/10/97), 704 So.2d 1269, writ denied, 98-0382 (La.6/26/98), 719 So.2d 1054. Absent a contemporaneous objection, however, a defendant cannot complain if the jury returns a legislatively-approved responsive verdict, even where there is insufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, 518 So.2d 1024 (La.1988), cert. denied, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990); State v. Mitchell, supra.
La. R.S. 14:42.1 provides in part:
A. Forcible rape is rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
* * *
Sexual battery is defined in La. R.S. 14:43.1. It provides in part:
A. Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
(2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
The district court minutes for May 26, 2004, noted for the record after the defense rested its case that "counsel have no objection to jury charge and verdict form." Since no contemporaneous objection was made, the defendant cannot complain after the jury returns a legislatively-approved responsive verdict, even where there is *271 insufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, supra; State v. Mitchell, supra.
A review of the record reveals that the evidence, viewed in the light most favorable to the prosecution, is sufficient to support the charged offense of forcible rape under the Jackson standard. The victim's testimony was direct evidence sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime of forcible rape. This court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. See State v. Gilliam, supra. In this classic case of "he said, she said," the record does not disclose any internal contradiction or irreconcilable conflict with physical evidence with regard to the victim's testimony regarding the essential elements of the crime, particularly with regard to the element of consent. Hence, this one witness's testimony, obviously believed by the trier of fact, is sufficient support for a requisite factual conclusion. See State v. White, supra. This is equally applicable to the testimony of victims of sexual assault. State v. Hannon, supra; State v. Ponsell, supra; State v. Robinson, supra. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Hannon, supra; State v. Ponsell, supra; State v. Watson, supra; State v. Turner, supra. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, supra. Because the evidence was sufficient to support the charged offense, the trial court did not err in denying the defendant's motion for post-verdict judgment of acquittal.
This assignment is therefore without merit.

Motion for New Trial
During the state's direct examination of Sergeant Cooper, questioning regarding the content of the victim's statement to police was interrupted with an objection to any hearsay testimony. After hearing arguments outside the presence of the jury, the trial court ruled the testimony to be admissible under La. C.E. art. 801 D(1)(b). The trial court stated that the testimony was not hearsay because of the matters brought up on impeachment. The defense objected to the ruling, stating that the statements merely demonstrated that the victim's trial testimony was inconsistent with her initial statement to police and with her testimony at the preliminary examination.
Thereafter, the state elicited testimony from Sergeant Cooper regarding the content of J.K.'s statement. Also, during the defense's cross-examination, Sergeant Cooper was twice allowed to view the victim's videotaped statement outside the presence of the jury to refresh her memory. The defense argues that the trial court erred in denying the defendant's motion for new trial, which was based on the denial of the defense's objection to Sergeant Cooper's reading of the victim's version of the events from her report to the jury. The defense contends that this improperly bolstered the victim's credibility. It argues that the victim had been fabricating the sequence of events since the very beginning of the case. The defense contends that the victim's trial testimony was inconsistent with both her statement to police and her testimony at the preliminary examination. It further argues that State v. King, infra, which is cited by the *272 state, is distinguishable from the instant case because it involved specific questions implying a recent fabrication by the victim. The defense cites State v. Milto, infra, and argues that the admission of the hearsay evidence was not harmless error.
The state notes the irony that the defense argues in brief that the victim's statements to Sergeant Cooper were not consistent with her trial testimony, and then argues there is not a charge of recent fabrication or improper influence or motive. It sets forth 14 examples of questions asked by defense counsel while cross-examining the victim that imply that the victim was lying. The state also notes that the remainder of the victim's cross-examination consisted of allegations that the victim would have been in trouble with her parents if she had told the truth, which it argues amounts to allegations of influence and improper motive. It concludes that the testimony presented by Sergeant Cooper revealed that the victim's statement was consistent with her trial testimony. La. C. Cr. P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence; i.e., that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App. 2d Cir.6/22/94) 639 So.2d 391, writ denied, 94-1981 (La.12/16/94), 648 So.2d 387, citing Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993), writ denied, 93-2897 (La.2/11/94), 634 So.2d 372; State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (1993); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
La. C.E. art. 801 provides in pertinent part:
The following definitions apply under this Chapter:
* * *
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
* * *
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive;
* * *
The state cited State v. King, 96-1303 (La.App. 3d Cir.4/2/97), 692 So.2d 1296, at trial and in brief, and argued that it is applicable in the instant case. In King, a bench trial, the defendant claimed that the trial court erred in overruling an objection to hearsay testimony by one of the state's witnesses, Detective Gatlin. Over the defendant's objection, Gatlin was permitted to relate statements that the minor victim made to him. These statements implicated the defendant. The state argued on appeal that the statements were not hearsay under La. C.E. art. 801 D(1)(b). The court noted that implications of fabrication arose during the defendant's testimony, during defense counsel's closing statements and during cross-examination of the victim. The court ruled that Gatlin's testimony legitimately supported that of the victim. Therefore, a valid basis for admissibility existed under Article 801 D(1)(b).
*273 The defense cites State v. Milto, XXXX-XXXX (La.App. 1st Cir.11/5/99), 751 So.2d 271, writ denied, 2000-K-0318 (La.9/15/00), 769 So.2d 2. That court held that a witness's out-of-court statement constituted a "prior consistent statement" that was potentially admissible as non-hearsay under La. C.E. art. 801 D(1)(b). Although the statement met the technical requirements of article 801 D(1)(b), the court still examined the circumstances to determine whether this prior consistent statement had sufficient relevance in the light of its only purpose, which was to rehabilitate a witness whose credibility in court had been challenged. The court determined that the statement was not relevant for the purpose of substantiating the in-court testimony. Thus, the statement in Milto should not have been admitted. However, its admission was found to be harmless error because it was cumulative at best, and its effect was comparatively minimal. See State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473. The court in State v. Jones, 02-908 (La.App. 5th Cir.2/25/03), 841 So.2d 965, writ denied, XXXX-XXXX (La.9/26/03), 854 So.2d 345, cited decisions rendered by this court on this issue:
In State v. Easter, 32,940 (La.App.2d Cir.4/07/00), 756 So.2d 703, writs denied, 00-1321 (La.2/9/01), 785 So.2d 28, 00-2529 (La.6/29/01), 794 So.2d 823, the court found that, under LSA-C.E. art. 801 D(1)(b), a witness's prior police statement was not inadmissible hearsay. In that case, the defense counsel cross-examined the witness concerning a police statement, alleging that the witness's trial testimony differed from that statement. The State was later allowed to call the officer who took the witness's statement, and elicit testimony that showed the substance of the police statement was largely consistent with the witness's trial testimony.
See also, State v. Ball, 32,498 (La.App.2d Cir.12/15/99), 748 So.2d 1249. The court in that case found that, under LSA-C.E. art. 801 D(1)(b), police officers' testimony repeating witnesses' recorded statements was not hearsay. The defense, in cross-examining the witnesses, implied they had fabricated information, so the State was allowed to buttress their testimony.
The Louisiana Supreme Court has long held that the admission of even hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. State v. Johnson, 389 So.2d 1302 (La.1980); State v. McIntyre, 381 So.2d 408, 411 (La.1980), cert. denied, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980).
The defense argument that the detective's testimony regarding the content of the victim's statement was hearsay appears to be directed not only to the victim's account of the sequence of sex acts, but also to the victim's entire account of the crime. The difficulty in applying the law to these facts arises because the detective's testimony as a whole was consistent with the victim's trial testimony, but inconsistent regarding the sequence of sex acts. Any inconsistent statements would impeach the credibility of the victim, and therefore be helpful to the defendant's case. La. C.E. art. 801 D(1)(b) clearly requires that for the statement to be non-hearsay, it must be a prior consistent statement. Hence, the statement is arguably hearsay and it was error for the trial court to admit it into evidence. Even so, its admission was harmless because the effect was merely cumulative and corroborative of the victim's trial testimony. See State v. Johnson, supra; State v. McIntyre, supra. Therefore, the trial court did not err in denying the defense's motion for *274 new trial. This assignment is therefore without merit.

Motion for Reconsideration of Sentence.
The defendant was sentenced to serve four years imprisonment at hard labor without benefits plus a fine of $2,000.00. After imposition of sentence, defense counsel made an oral objection to the sentence and an oral motion to reconsider the sentence, which was denied.
The defense notes that the penalty provision for the offense of sexual battery does not provide for the imposition of a fine. It also argues that the sentence is constitutionally excessive considering this defendant and the offense. Particularly, the defendant has no significant criminal record, and the record does not reflect any major physical injuries and emotional distress to the victim. The defense further contends that the responsive verdict indicates the jury's concern for the victim's credibility.
The state argues that the facts of the case support the defendant's sentence. It also notes that if the trial court exceeded its authority in imposing a fine, then only that part of the sentence should be set aside.
La. R.S. 14:43.1 C provides that whoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years. The trial court imposed a fine on an offense that does not include a fine in the penalty; therefore, the sentence is amended to vacate the fine.
La. C. Cr. P. art. 881.1 applies to defendant's sentence. This article precludes the defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. In such a circumstance, the defendant is simply relegated to having the appellate court consider the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App. 2d Cir.2/25/98), 707 So.2d 164. Also State v. Moore, 37,935 (La.App. 2d Cir.1/28/04), 865 So.2d 227, writ denied, XXXX-XXXX (La.7/2/04), 877 So.2d 142.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
Considering the circumstances of the case and the background of the defendant, the four-year hard labor sentence is not grossly out of proportion to the seriousness of the offense, or nothing more than a purposeless and needless infliction of pain and suffering. See State v. Dorthey, supra; State v. Bonanno, supra. When the crime of sexual battery and this defendant's punishment are viewed in light of the harm done to society by sex offenders, it does not shock the sense of justice. See State v. Hogan, supra; State v. Bradford, supra. Thus, the defendant's sentence of imprisonment is not constitutionally excessive. However, because the trial court imposed a fine on an offense that does not include a fine in the penalty, the sentence is amended to vacate the fine.

*275 CONCLUSION
For the foregoing reasons, the defendant's conviction is affirmed, and his sentence is affirmed as amended.
AFFIRMED AS AMENDED.
NOTES
[1] The victim's initials are used because of victim confidentiality requirements applicable to the instant case under La. R.S. 46:1844(W).