NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-144

STATE OF LOUISIANA

VERSUS

B. M.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 48007
HONORABLE PATRICK MICHOT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and
James T. Genovese, Judges.

AFFIRMED.

Bart J. Bellaire
Assistant District Attorney
Fifteenth Judicial District
100 N. State Street, Suite 215
Abbeville, LA 70510
(337) 898-4320
Counsel for Appellee:
        State of Louisiana

**Carey J. Ellis, III**
**Louisiana Appellate Project**
**P.O. Box 719**
**Rayville, LA 71269**
**(318) 728-2043**
**Counsel for Defendant/Appellant:**
        **B. M.**

**DECUIR, Judge.**

Defendant, B.M.,[1] was convicted of one count of aggravated incest, a violation of La.R.S. 14:78.1. The trial court sentenced Defendant to twenty years imprisonment and a fine of $50,000.00.

Defendant has perfected a timely appeal, alleging three assignments of error: (1) the evidence was insufficient to sustain a verdict of aggravated incest; (2) Defendant was not given an opportunity to submit a closing argument; and (3) the sentence was excessive under the circumstances of the case.

### FACTS

Between August 1, 2003, and August 30, 2006, Defendant, who was over the age of seventeen, inappropriately touched and fondled his daughter's genitals. The daughter, B.K., was between ten and thirteen years of age at the time of the sexual contacts.

### ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues that there was no corroborating physical evidence or testimony which supported his daughter's accusations of sexual abuse. He asserts that the conviction was based solely on her incredible testimony.

At trial, the following facts were established: The victim's birth date was March 12, 1993. Defendant was her father. The victim's mother was murdered when she was three years old, and the victim lived with her paternal grandmother, M.F., until she was ten years old. Between approximately 1996 and 2003, Defendant was in and out of jail or prison for various offenses. The victim lived with her grandmother until 2003, then she moved in with Defendant and his wife, C.M. In August 2006, Defendant's probation was revoked for various violations, and he was

---

[1] Pursuant to La.R.S. 46:1844(W), the initials of the parties involved will be used to protect the identity of the victim.

returned to prison. The victim continued to live with her stepmother until May 2007 when, after the school found a letter written by the victim indicating she was having sex with a teenage boy, the victim made the allegations of sexual abuse by her father. The victim was removed from the stepmother's home and placed in foster care.

Defendant argued at trial, and in brief, that the victim, B.K., was an angry and vengeful child who lied about her father to deflect from the fact that she had been caught having sex with a teenage boy.

Aggravated incest is, in pertinent part, defined as:

A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.

B. The following are prohibited acts under this Section:

(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.

(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

La.R.S. 14:78.1.

In *State v. Lambert,* 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27, this court stated:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King,* 436

2

So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody,* 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See *King,* 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

The testimony of a single witness is sufficient to support a verdict, absent internal contradiction or irreconcilable conflict with the physical evidence. Moreover, the single witness' testimony alone is sufficient even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. This is also true in cases of sexual assault victims, and any credibility determinations made by the triers of fact are normally not within the preview of the reviewing courts. *State v. Schexnaider,* 03-144 (La.App. 3 Cir. 6/4/03), 852 So.2d 450; *State v. Watson,* 39,362 (La.App. 2 Cir. 4/20/05), 900 So.2d 325; *State v. Hotoph,* 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, *writs denied,* 99-3477 (La. 6/30/00), 765 So.2d 1062 and 00-150 (La. 6/30/00), 765 So.2d 1066.

Defendant is correct when he states that the State's case was premised entirely on the victim's testimony. There was no other evidence submitted that would in any way corroborate the victim's allegations. Although two other witnesses testified for the State, their testimonies only established that the Office of Community Service ("OCS") took custody of the victim and placed her in foster care and that there had been an investigation concerning the victim's allegations.

The victim testified that the abuse occurred mostly at night when the stepmother was asleep or on the weekends when the stepmother was not at home. She stated that Defendant would fondle her as he masturbated, and, if she refused, he would beat her until she gave in. She stated that her bedroom was right next to

3

Defendant's bedroom and that she would yell and cry for help, but her stepmother would never wake up. She said that he once attempted to have sexual intercourse when his wife was gone. She told him no, but before he could force himself on her, the stepmother came home and interrupted him when she rattled the locked screen door. Another time when he wanted to have intercourse, she told him she was having her period, but was actually lying. One time, he attempted to make her perform oral sex on him. She said that he had punished her for something and made her get on her knees and face the wall. He told her to turn around, and he had his penis out of his underwear. She testified that he said: "You can do it. Just pretend like it's a lollipop. And I said 'no,' and then as always my stepmom would interrupt." The victim said that before the stepmother moved in, her father would make her sleep with him, and he would force her to masturbate him. She stated that when he got out of prison prior to 2003, he stayed at his mother's house, and insisted B.K. sleep in bed with him instead of with her grandmother where she regularly slept.

The victim denied that she wrote the letter or that the letter was about her, stating that the letter came to be in her possession because she had been passing it back and forth between two friends. She further denied having sex with the boy mentioned in the letter. However, she admitted she told Mandy Dartez that she and a friend had just made up the incident discussed in the letter. B.K. also stated that a few months prior to the letter incident, she told her stepmother about the abuse. She also stated that her stepmother was violent toward her.

M.F., the victim's grandmother and Defendant's mother, corroborated that the victim's mother was murdered when she was three years of age and that the victim had lived with her from that time until 2003, when the girl moved in with her father

4

and stepmother in Abbeville. She denied that the victim slept with her father when Defendant got out of prison and stayed at her house for a few weeks.

She stated that the victim never said anything to her about her father's sexual abuse, not before she went to live with him or after. She said that if the victim had said anything, she would have "called the law" herself.

C.M., the victim's stepmother, testified that the victim had come to live with her and Defendant when the victim was ten years old. B.K. was already menstruating and wearing bras at ten years of age. When the victim came to live with them, they had a two-bedroom house, and the girl had her own room where she slept by herself. C.M. worked for the Council on Aging. She had a regular nine to five job and never worked weekends. During the summer, she would take the girl to work with her most days.

After Defendant had been in prison for several months, she was called to school because of a letter that had dropped out of the victim's pocket. At school, the victim denied it was her letter, but C.M. stated that she recognized the victim's handwriting, having recently found a similar letter in one of her pockets when she was washing clothes. It was during this visit to school that the victim made the accusations regarding her father. C.M. stated that the girl had never said anything prior to this time about her father.

C.M. stated she did not believe that the alleged sexual activity happened. She stated that when they were all home together, Defendant would go into the victim's room to play on the victim's play station with her while C.M. was working around the house. Other than that, Defendant was rarely home, and the victim was most often with her when she was away from the house, working, or shopping. Finally, C.M.

5

stated she never saw bruises on the victim, except for one time when Defendant whipped the victim for beating up a retarded girl at school.

Defendant admitted he has several convictions. He stated that the victim's mother was a drug addict and had used drugs when she was pregnant with the victim. He stated that when he was released from prison the last time before the victim came to live with him, he stayed at his mother's house, but he did not sleep with the victim– he shared a room with his brother, and the victim slept with her grandmother. He denied the victim's allegations, but stated that he was strict with her and did sometimes discipline her with a belt. Usually, he either made her do chores, like wash walls, or kneel on her knees. He denied he ever sexually touched the girl. He stated that he was seldom home and that he had affairs with other women, but never his daughter.

As noted, the State's case was premised entirely on the victim's testimony alone. There was no physical evidence. The victim testified the sexual abuse happened. Defendant, Defendant's wife, and his mother testified that it did not.

Where there is conflicting testimony about factual matter, the resolution of which depends upon a determination of the credibility of the witness, the matter is one of the weight of the evidence, not its sufficiency. While credibility calls are usually left to the trier of fact, the prevailing jurisprudence holds:

> The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. [*State v.*] *Mussall,* 523 So.2d 1305[(La.1988)]; [*State v.*] *Green,* 588 So.2d 757 [(La.App. 4 Cir. 1991)]. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So.2d 1319, 1324 (La.1992).

6

> A factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence. *State v. Huckabay,* 2000-1082 (La.App. 4 Cir 2/6/02), 809 So.2d 1093; *State v. Harris,* 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432.

*State v. Galindo,* 06-1090, p. 10 (La.App. 4 Cir. 10/3/07), 968 So.2d 1102, 1110, *writ denied,* 07-2145 (La. 3/24/08), 977 So.2d 952, citing *State v. Armstead,* 02-1030, p. 6 (La.App. 4 Cir. 11/6/02), 832 So.2d 389, 393, *writ denied,* 02-3017 (La. 4/21/03), 841 So.2d 791. *See also, State v. Johnson,* 03-1228 (La. 4/14/04), 870 So.2d 995; *State v. Mitchell,* 01-872 (La.App. 3 Cir. 2/13/02), 815 So.2d 1041, *writ denied,* 02-785 (La. 11/8/02), 828 So.2d 1110; and *State v. Echols,* 39,754 (La.App. 2 Cir. 6/29/05), 907 So.2d 263.

Defendant does not assert that all of the essential elements of the offense are not established, but that the victim cannot be believed. Accordingly, the only question on appeal is whether the trial court acted rationally in finding B.K.'s testimony credible. As noted above, and as has been repeatedly stated in Louisiana jurisprudence: "A fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process." *Mitchell,* 815 So.2d at 1047. If rational triers of fact could disagree as to credibility of the testimony, the matter is to be resolved in a light most favorable to the prosecution. Accordingly, only irrational decisions to convict by the triers of fact will be overturned on appeal. *See State v. Mussall,* 523 So.2d 1305 (La.1988); *Galindo,* 968 So.2d 1102, and *State v. Ware,* 06-1703 (La. 6/29/07), 959 So.2d 459.

In this case, we find that rational triers of fact could disagree on the issue of the victim's credibility. However, considering the matter in a light most favorable to the prosecution, we affirm the conviction.

Defendant complains that the trial court committed reversible error when it did not allow him to make a closing argument. At the conclusion of Defendant's testimony, the following exchange took place:

> MR. BELLAIRE: (Assistant district attorney) I have no other questions.
>
> MS. THOMAS: I have nothing further.
>
> THE COURT: You may step down.
>
> (WITNESS EXCUSED)
>
> MS. THOMAS: Defense rests, Your Honor.
>
> MR. BELLAIRE: I have nothing further, Your Honor.
>
> THE COURT: I find the defendant guilty as charged.

The State thanked the trial court, and the trial record ended.

Defendant argues in brief that the trial court did not give him the opportunity to make his closing argument, thus denying him his constitutional right under the Sixth and Fourteenth Amendments to the United States Constitution. Defendant relies on *State v. Moorcraft*, 319 So.2d 386 (La.1975) and *State v. Davis*, 01-3033 (La.App. 1 Cir. 6/21/02), 822 So.2d 161, to support his position.

In *Davis,* the defendant was found guilty as charged in a bench trial. The first circuit found that the trial judge committed reversible error when he denied defense counsel's request to make a closing argument. The first circuit stated:

> Defendant contends that, pursuant to *State v. Moorcraft*, 319 So.2d 386 (La.1975), and *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), the trial court committed reversible error when it refused to allow defense counsel to make a closing argument. In response, the state argues that this court should adopt the dissent of Justice Summers in *Moorcraft,* and find that the substantial rights of defendant were not violated. Additionally, the state argues that the

8

instant case is distinguishable from *Moorcraft* and *Herring*. The state asserts that the factual and legal issues here were not as complex as the cases cited by the defendant, and that other trial formalities, such as opening statements, were waived.

In *State v. Moorcraft*, the defendant was charged with failure to stop at a stop sign and resisting an officer. The trial judge refused to allow defendant's attorney an opportunity to present closing argument. The trial judge found the defendant guilty of both charges and defendant appealed. The Louisiana Supreme Court stated that defendant's rights under Article I, § 13 of the Louisiana Constitution had been violated. The supreme court also relied on *Herring*, which held that a state court's denial of defense counsel's closing argument violated the Sixth and Fourteenth Amendments of the United States Constitution. Additionally, the supreme court held that *State* v. *Hollingsworth*, 160 La. 26, 39-40, 106 So. 662, 667(1925), which found that a trial judge committed reversible error when he refused to hear closing argument by the defense, was still valid law. *State v. Moorcraft*, 319 So.2d at 388.

Although *Moorcraft* and *Herring* were decided twenty-seven years ago, the rule of law is the same. Based upon *Hollingsworth*, *Moorcraft* and *Herring,* the total denial of the opportunity to present closing argument in a criminal trial before a judge violates defendant's Sixth Amendment rights. Therefore, we find that the trial judge committed reversible error when he denied defense counsel's request to make a closing argument.

*Id.* at 164-65.

It appears from the jurisprudence there must be an actual denial or refusal of a request to assert Defendant's right to present a closing argument. As observed in *Moorcraft* and *Davis*, defense counsels did not waive their right to closing arguments and had requested to be allowed to make closing arguments which were denied by the trial courts. Moreover, in the current case, the State asserts that the prosecution waived its right to a closing argument and Defendant acquiesced "by not requesting argument after waiver by the State." Finally, Defendant did not object on the record.

In *Moorcraft*, while determining whether the defendant expressed his objections to not being allowed to give a closing argument, the supreme court specifically addressed the "contemporaneous objection rule":

9

The State argues in brief that the relator failed to object to the trial court's ruling denying him the right to present final argument and, consequently, failed to set forth the grounds for objection. This allegation of failure to object and give reasons therefor must be considered in light of La.C.Cr.P. art. 841, as amended by Act 297 of 1974, which reads in pertinent part:

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. . . . *It is sufficient that a party, at the time the ruling* or order *of the court is made or sought, makes known to the court the action which he desires the court to take,* or of his objections to the action of the court, and the grounds therefor.
>
> . . . . (Emphasis supplied.)

A review of the verbatim transcript of relator's request for opportunity to present final argument and the subsequent colloquy between relator's attorney and the court clearly exhibits that relator's attorney, at the time of the court's ruling, made known to the court the action he desired the court to take; the code article expressly states that this ". . . is sufficient . . . ." The requirement of making known ". . . his objections to the action of the court, and the grounds therefor . . ." is clearly stated in the alternative, as is evident from the comma appearing after the word 'take,' and the use of the disjunctive 'or,' following the comma. It is our opinion that the relator's attorney exhibited, as clearly as he was able under the circumstances, that he desired the court to permit him to present final argument.

*Moorcraft,* 319 So.2d at 388.

For the above reasons, there is no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER THREE

Defendant argues that the imposition of the maximum sentence of twenty years imprisonment was constitutionally excessive under the circumstances of the case. He argues that mitigating circumstances should have been considered. Defendant was convicted of aggravated incest, a violation of La.R.S. 14:78.1, which provides for a range of imprisonment of not less that five years, nor more than twenty years, with

10

or without hard labor, or a fine of not more than fifty thousand dollars, or both. La.R.S. 14:78.1(D).

In *State v. Barling,* 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied,* 01-838 (La. 2/1/02), 808 So.2d 331, this court stated:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell,* 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne,* 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook,* 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied,* 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Moreover, in *State v. Smith,* 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied,* 03-562 (La. 5/30/03), 845 So.2d 1061, this court held that in order to decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, the following factors may be considered:

> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith,* 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste,* 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to

assess the aggravating and mitigating circumstances presented by each case." *State v. Cook,* 95-2784 (La.5/31/96); 674 So.2d 957, 958.

Defendant filed a "Motion to Reconsider Sentence" and argued his sentence was excessive for the same reasons that he argued the evidence was insufficient. In brief, Defendant admits he has an extensive criminal history, but asserts the trial court did not take into consideration his employment history, education, or other factors in mitigation.

At the sentencing hearing, after ascertaining that Defendant had an opportunity to review the pre-sentence investigation report, the trial court placed the report into the record, and stated:

> Mr. Matthews, you were convicted of aggravated incest of your daughter. In mitigation, –The only thing I can find in mitigation in your case is that you admitted to drug use.
>
> In aggravation, you denied your guilt. You committed hideous acts against the victim. She is–was and still is in extreme fear of you, any retribution that you might bestow upon her if you were ever released from incarceration.
>
> She's had to undergo mental health treatment. She's very traumatized to this day.
>
> You have a violent history. You've committed violence against women. This is your fourth felony conviction. You do get the benefit, however, of having–of the rule of lenity. Aggravated incest in 2006 is the applicable date since the crime occurred from 8/1 of '03 to 8/30 of '06. So that's the applicable date. According to the rule of lenity, you get the benefit of the earlier statute that was more lenient than the current statute, which is a much more severe statute.
>
> Looking at all the aggravating and the mitigating circumstances, I feel that a maximum penalty is appropriate in this situation.

This court affirmed a fifteen-year sentence imposed on a defendant for aggravated incest in *E.J.F.*, 999 So.2d 224. The victim was the defendant's granddaughter. Defendant was technically a first time felony offender. This court

12

noted that the offenses began when the child was eight years old and lasted for several months. This court noted that "[t]he public and our legislature expect the Courts to impose substantial and meaningful sentences in cases such as yours which involve sexual abuse of the very young and defenseless." *Id.* at 235. Undoubtedly, the legislature intends for the courts to be harsh when sentencing these types of crimes, because as noted by this court in *E.J.F.*, "[i]f this case had occurred at a time that the present law was in effect, you would be facing a minimum sentence of twenty-five (25) years imprisonment on each count. The court however must impose a sentence in compliance with the law in effect at the time you committed these crimes." *Id.* Louisiana Revised Statutes 14:78.1(D) was amended in 2006 to provide, in pertinent part: "Whoever commits the crime of aggravated incest on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than life imprisonment."

We cannot say that the trial court abused its vast discretion when it sentenced Defendant to the maximum sentence of twenty years imprisonment considering the abuse he inflicted on his daughter for several years and the fact that he is a fourth felony offender. Accordingly, there is no merit to this assignment of error.

**DECREE**

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.